891 So.2d 645 (2005)
Melinda KUTZORIK, Appellant,
v.
STATE of Florida, Appellee.
No. 2D03-4338.
District Court of Appeal of Florida, Second District.
January 28, 2005.
*646 James Marion Moorman, Public Defender, and Pamela H. Izakowitz, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and William I. Munsey, Jr., Assistant Attorney General, Tampa, for Appellee.
NORTHCUTT, Judge.
When pleading guilty to possession of cannabis with intent to sell or deliver and to manufacturing cannabis, Melinda Kutzorik reserved the right to appeal the denial of her dispositive motion to suppress evidence. She here contends that the circuit court erred in determining that she voluntarily consented to the search in which the drugs were discovered. We reverse and remand with directions to discharge her.
At the hearing on the motion to suppress, a police officer testified that he had contact with an unidentified person who claimed to have purchased marijuana from Kutzorik. Law enforcement performed a brief stake-out of Kutzorik's mobile home after dark, but did not notice any unusual activity. Despite this, and knowing that he did not have evidence to support a warrant, the officer decided to investigate further. He knocked on Kutzorik's door at about 10 p.m. When she responded, he asked to step inside and speak to her. Kutzorik acceded. At least three uniformed officers then entered the small mobile home, which was approximately 14 feet by 70 feet. Once inside, the officer told Kutzorik he had received a complaint that a woman named Mindy was selling marijuana from the home.
According to the officer, Kutzorik said that she did not sell marijuana, but that she used it. She handed him the butt of a marijuana cigarette that was in an ashtray on the coffee table. The officer then asked if he and the other officers could "look around." Kutzorik hesitated, then became emotional and said "okay." The court questioned the officer about exactly what Kutzorik had said. The officer related that she told him "I have nothing to hide. You can look around." She then started opening the kitchen cupboards, as if to show the officers that they did not contain drugs. The officer considered that to be a consent to search.
The officers went directly to a kitchen drawer in which the unidentified person told them the marijuana was kept. Inside the drawer they found 150 grams of marijuana packaged for sale. They searched the rest of house and also found three small cannabis plants growing in a bedroom.[1]
*647 Kutzorik and a friend who was present during the incident also testified at the suppression hearing and, on certain points, their version of the event conflicted with that of the officers'. But, although the order on Kutzorik's motion to suppress did not contain any specific factual findings, the denial was an implicit ruling that the circuit court found the police officers' testimony credible. See Gonzalez v. State, 578 So.2d 729, 731 n. 2 (Fla. 3d DCA 1991). We give deference to the court's finding of facts, and therefore accept the officers' testimony. But we review the court's application of the law to the facts de novo, and this includes its determination of whether Kutzorik's consent was objectively voluntary. Cf. State v. Glatzmayer, 789 So.2d 297, 303-04 (Fla.2001).
A warrantless search conducted pursuant to a valid consent is constitutionally permissible. Schneckloth v. Bustamonte, 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). But the State has the burden of proving that the consent was freely and voluntarily given. Taylor v. State, 855 So.2d 1, 17 (Fla.2003), cert. denied, ___ U.S. ___, 124 S.Ct. 1605, 158 L.Ed.2d 248 (2004). Here, the police claimed Kutzorik consented to the search during a consensual encounter. If, however, the officers' show of authority would have led a reasonable person to conclude that she was not free either to decline their requests or to terminate the encounter, Kutzorik had been seized when she gave her consent. This seizure would have been lawful only if the officers had a reasonable suspicion that she had committed a crime. Florida v. Bostick, 501 U.S. 429, 439, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); Miller v. State, 865 So.2d 584, 587 (Fla. 5th DCA 2004).
The facts in Miller are in many ways similar to the facts in this case. There, three uniformed law enforcement officers arrived at Miller's home to investigate an anonymous tip. They approached Miller as she was leaving her home and told her they were there to investigate a complaint and needed to speak with her about "possible drug activity." They suggested it would be better if they all went into her home so that neighbors would not witness the investigation. Once inside, an officer asked Miller for her identification, which he retained throughout their conversation. The officer told her he had information that drugs had been used in the house. He asked if she was in possession of drugs. When she replied affirmatively, he asked her to retrieve them. When she did so, the officers confiscated the contraband and left without searching the home. Miller was not arrested at the time, but she was later charged with crimes connected with the seized items.
In reversing the denial of Miller's motion to suppress, the Fifth District discerned three general circumstances relevant to determining whether her consent was voluntary or whether it was given after she had been seized by a show of authority: (1) the time and place of the encounter; (2) the number of officers present; and (3) the officers' words and actions. 865 So.2d at 587. Our review of these factors as applied to the totality of the circumstances in this case leads us to conclude that a reasonable person in Kutzorik's position would not have felt free to decline the officers' request to search. See Bostick, 501 U.S. at 439, 111 S.Ct. 2382 (stating that totality of the circumstances surrounding the encounter must be analyzed).
*648 To begin with, the search was of Kutzorik's home. The home is where a person enjoys the highest expectation of privacy. Payton v. New York, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); Vasquez v. State, 870 So.2d 26, 29 (Fla. 2d DCA 2003). As such, the factors bearing on the voluntariness of a consent to search must be specially scrutinized. Gonzalez, 578 So.2d at 732. Moreover, when the police confront a person in her home, it is clear that the authorities know who she is and where she lives. This is far different from  and far more unsettling than  an anonymous encounter on the street. See Miller, 865 So.2d at 588. When law enforcement announces its presence at a citizen's home, she has no real opportunity to walk away. Here, the police knocked on Kutzorik's door at about 10 p.m. This late hour of the night added to the intimidating circumstance that Kutzorik faced.
At least three uniformed officers entered the small mobile home. One officer immediately announced that he had heard that "Mindy" was selling marijuana from the location. The fact that Kutzorik knew she was the target of the investigation, and that law enforcement believed she was hiding drugs in her home, suggests a seizure rather than a consensual encounter. See Miller, 865 So.2d at 588; United States v. Glass, 128 F.3d 1398, 1406-07 (10th Cir.1997). Moreover, the number of uniformed officers present inside Kutzorik's small home was likely alarming to her. See Miller, 865 So.2d at 588; Glass, 128 F.3d at 1406 (noting the fact that more than one officer confronted the suspect is a factor in determining whether a seizure has occurred).
Finally, we focus on the officer's actions in seeking consent to search. At the hearing, he admitted Kutzorik was in an emotional state. Kutzorik described herself as upset and shaky, which is consistent with the officer's testimony. When the officer first asked for consent, she hesitated "for a little while," but the officer continued to ask for her consent. Finally, Kutzorik began opening and closing cabinets, saying "I have nothing to hide."
The totality of the circumstances in this case  beginning with the late-night arrival of a uniformed officer at the door, continuing with the entry of three uniformed officers into the small home, followed by an announcement that the police suspected a crime and knew drugs were on the premises, and culminating with repeated requests for consent to search when the resident was in an emotional state  were such that no reasonable person would have felt free to end the encounter by demanding that law enforcement leave her home. To the contrary, a reasonable person would believe that compliance with the officers'"requests" was mandatory. See generally Perko v. State, 874 So.2d 666, 667 (Fla. 4th DCA 2004) (Klein, J., concurring) (noting that it would never occur to any person unversed in search and seizure law that he or she could withdraw her consent at any time), review granted, Table No. SC04-1324, 888 So.2d 17, 2004 WL 2889908 (Fla. Nov. 5, 2004). Thus, this was not a consensual encounter; the officers' show of authority effectively seized Kutzorik. See Popple v. State, 626 So.2d 185, 186 (Fla.1993) ("a significant identifying characteristic of a consensual encounter is that the officer cannot hinder or restrict the person's freedom to leave or freedom to refuse to answer inquires"); Miller, 865 So.2d at 588.
The facts show, and one officer conceded, that the police did not have a reasonable suspicion required by law to justify seizing Kutzorik. When a consent to search follows illegal police activity, the State bears the burden of showing by clear *649 and convincing proof that there was an unequivocal break in the chain of illegality sufficient to dissipate the taint of the law enforcement's prior illegal activity. Faulkner v. State, 834 So.2d 400, 403 (Fla. 2d DCA 2003); Findley v. State, 771 So.2d 1235, 1237 (Fla. 2d DCA 2000). None of the evidence about what happened at Kutzorik's home could prove such a break in the chain. The search of Kutzorik's home was illegal and the contraband was illegally seized. As such, it must be suppressed.
We reverse the order denying Kutzorik's dispositive motion to suppress evidence and remand with directions to discharge her.
ALTENBERND, C.J., and STRINGER, J., Concur.
NOTES
[1] Kutzorik was charged with one count of possession of cannabis with the intent to sell, manufacture, or deliver and one count of manufacture of cannabis, under section 893.13(1)(a), Florida Statutes (2002). She was not charged with misdemeanor possession of marijuana, § 893.13(6)(b), based on the marijuana cigarette butt she gave to the officer. Accordingly, Kutzorik's motion to suppress was dispositive of the charges filed against her. The issue of whether the cigarette butt was subject to suppression is not before us. Cf. Beauchamp v. State, 742 So.2d 431, 431 n. 4 (Fla. 2d DCA 1999). We also note that the State correctly has not argued that the search here was permissible as a search incident to arrest. Even if the officers had arrested Kutzorik for possession of the marijuana cigarette butt, they would not have had authority to search closed kitchen drawers and bedrooms in her home. See Amburn v. State, 701 So.2d 568, 569 (Fla. 2d DCA 1997).