40 So.3d 922 (2010)
E.J., a child, Appellant,
v.
STATE of Florida, Appellee.
No. 4D09-736.
District Court of Appeal of Florida, Fourth District.
August 4, 2010.
Carey Haughwout, Public Defender, and Patrick B. Burke, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Daniel P. Hyndman, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, J.
E.J. appeals her juvenile disposition on a charge of possession of marijuana, claiming that the trial court erred in denying her motion to suppress. She maintains that her actions did not constitute consent to search but a mere acquiescence to authority. We agree and reverse.
E.J. was charged with possession of marijuana. She filed a motion to suppress the marijuana seized by police officers, claiming that she had not consented to the search but simply acquiesced to authority. At the hearing, Deputy Cheema of the St. Lucie County Sheriff's Office testified that she observed a vehicle make an illegal turn. The deputy turned on her lights to stop it, and eventually pulled the vehicle over although it took an "unusually long" time for the vehicle to stop. E.J. was a passenger in the vehicle. When the deputy approached the driver, she could smell alcohol on him. She asked him to step out of the car, and a DUI officer arrived and conducted sobriety tests. The driver was thereafter arrested.
The deputy took E.J.'s name and date of birth, which showed that E.J. was fourteen. Because the vehicle needed to be towed, the deputy opened the door and asked the passenger, E.J., to step out of the car so she could inventory it. As E.J. stepped out of the car the officer asked if she had anything on her person about which the deputy should be concerned. E.J. said no. At that point, the officer did not have any reason to believe that E.J. was armed or dangerous. Nevertheless, after E.J. stepped out of the vehicle, she *923 spontaneously turned and placed her hands on the top of the car, spreading her legs. The deputy took that to mean that E.J. was consenting to a search so she patted her down and found a large bulge on her right side. She asked E.J. what it was and the juvenile said "weed." The officer took the marijuana from her pocket. The deputy then arrested E.J.
A second officer at the scene also testified to observing E.J. place her hands on the vehicle and spread her legs. He also told the court that where officers are involved in a late night stop and the vehicle takes a long time to stop, the officer's suspicions are elevated. Because the driver is being detained for a crime, he would suspect that the passenger is also somehow involved in the crime, even a DUI, because the passenger would be driving as a Good Samaritan if the driver were impaired. He had no reason to believe that E.J. was armed or dangerous, although he said he had no reason to think that she wasn't. He said, "I think everybody is a danger to myself or Officer . . . or Officer Cheema until they're . . . until they're proven otherwise."
E.J. testified that she was fourteen years old at the time of the stop, and this was her first and only encounter with police officers. When she exited the vehicle and placed her hands on the car top, she was simply following what the driver was doing, as he was being searched by the officers also.
In denying the motion to suppress, the trial court found that there was a founded suspicion to stop the vehicle for making an improper turn. Thereafter there continued to be a founded suspicion to detain and frisk the driver because this was a nighttime stop, and the vehicle had tinted windows. The court said, "Everything inside is unknown, . . . that . . . everyone is a danger until proven otherwise in a circumstance of this type." The court concluded that since it was necessary to tow the vehicle it was necessary to remove the passenger, and E.J. consented to the search by her conduct in placing her hands on the vehicle and spreading her legs. After the denial of her motion, E.J. then pled to the charge, and the court withheld adjudication, placing her on probation. It also determined that the suppression order was dispositive of the case, thus permitting E.J. to appeal the ruling.
A trial court's legal determinations in a suppression order are reviewed de novo. Porter v. State, 765 So.2d 76, 77 (Fla. 4th DCA 2000). Where consent to a search is the issue, "the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority." Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). The state must prove its burden by a preponderance of the evidence. Jorgenson v. State, 714 So.2d 423, 426 (Fla. 1998). To conclude that a search is involuntary the court must find that the defendant's "will ha(d) been ... overborne and his capacity for self-determination critically impaired." See United States v. Watson, 423 U.S. 411, 424, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 225, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)); see also Wilson v. State, 952 So.2d 564, 569 (Fla. 5th DCA 2007).
Whether consent is voluntary is a question of fact to be determined from the totality of the circumstances. McDonnell v. State, 981 So.2d 585, 588 (Fla. 1st DCA 2008). Those factors include the age of the defendant, whether the defendant had a prior criminal historythe presumption being that one who has prior criminal arrests knows his or her legal rightsand *924 whether there is evidence that the defendant was intoxicated or suffering from a mental deficiency that impaired his or her ability to make an intelligent decision. Wilson, 952 So.2d at 570. Although gestures and conduct may evince consent, see Ingram v. State, 928 So.2d 423, 430 (Fla. 1st DCA 2006), they are merely part of the totality of the circumstances that a court may look to in determining whether the accused voluntarily consented to a search.
Based upon the foregoing principles, the trial court used the wrong standard and thus erred in determining that the state proved a voluntary consent by E.J. Instead, the court viewed the issue as whether the officers reasonably believed that E.J.'s actions of spreading her legs as though to be patted down constituted a consent to search, even though the court also acknowledged that she was simply copying what the arrested driver was doing. It is not what the officers reasonably believed but whether by a preponderance of the evidence the defendant in fact gave consent. The court did not analyze the consent issue based upon this standard and did not address the issues of E.J.'s age or experience or any other factors.
Our analysis of the facts requires us to reverse. Both E.J.'s age and inexperience with police prevent the conclusion that she freely and voluntarily consented to any search. The deputy did not ask for consent to search. With her age and lack of experience with police, she did not know that she could refuse to consent. Her actions in assuming the spread eagle position merely mimicked what she observed the arrested driver doing. Thus, her conduct does not yield the conclusion that she consented but merely acquiesced to the authority around her and what she expected was required in the circumstances.
The state has not suggested that we alternatively rely on the court's conclusion that the frisk was supported by reasonable suspicion, because the court was also in error in that conclusion. The mere stop of a vehicle does not confer upon the authorities the right to frisk a passenger. See Moore v. State, 874 So.2d 42, 43 (Fla. 2d DCA 2004); Smith v. State, 735 So.2d 570, 572 (Fla. 2d DCA 1999). Both Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and section 901.151, Florida Statutes, permit an officer to detain someone when the officer reasonably suspects that the person has committed, is committing or is about to commit a crime, and then to frisk that person if the officer has cause to suspect that the individual may be armed. The officer must articulate a particularized basis to suspect that the individual is armed. See Owens v. State, 854 So.2d 737, 740 (Fla. 2d DCA 2003). Here, the officers discussed only general conditions which caused them to be particularly careful. These, in and of themselves, are insufficient to show a particularized concern. See, e.g., Rodriguez v. State, 16 So.3d 317 (Fla. 2d DCA 2009) (pat down based upon generalized concern for officer safety with no suspicion that particular defendant is armed or dangerous is constitutionally impermissible). They testified that they had no information or suspicion that E.J. had committed a crime or was armed and dangerous. Their generalized fear for officer safety is most understandable, yet it alone did not justify a frisk of E.J. That the court erred in so concluding was most likely not lost on the state, which did not argue otherwise in its brief.
Reversed and remanded to vacate dispositional order.
TAYLOR and MAY, JJ., concur.