TAYLOR, J.
In this appeal from the denial of a motion to suppress evidence, the defendant contends that the trial court erred in finding that he voluntarily consented to a search of his home because he was handcuffed on the- ground when the police officer obtained his consent. We find no error in the trial court’s ruling that the defendant’s consent was voluntary, rather than mere acquiescence to police authority, based on the totality of circumstances, and affirm denial of defendant’s motion to suppress.
The defendant entered a plea of no contest to trafficking in cannabis and possession of drug paraphernalia, reserving the right to appeal the denial of his dispositive motion to suppress evidence. At the hearing on the motion to suppress, the state called one witness, Detective Wilbert Brown of the Miramar Police Department. Detective Brown testified that on November 15, 2008, his partner, Detective Hans- *184 man, was conducting surveillance on the defendant’s residence, based on an anonymous tip. Hansman advised Brown that there was some movement going on at the front of the house, so Brown went to that location. When Brown arrived, he and Hansman, dressed in plain clothes, made contact with the defendant, his girlfriend, and her friend. As Brown approached, he saw the defendant standing in front of the house. The front door was open; he could smell the odor of cannabis emitting from the house. After advising the defendant that they were narcotics detectives conducting an investigation, Hansman handcuffed the defendant and placed him on the ground. The defendant stated that there were cannabis plants in the house. When Hansman asked for consent to go into the house, the defendant said “yes.” The officers then picked him up and moved him to the police car. They removed the handcuffs to allow the defendant to sign a consent form. Both officers witnessed the defendant initial and sign the consent form.
Detective Brown testified that before the defendant signed the form, he first gave the officers oral consent to enter. He said the defendant was not forced or threatened in any way to give his oral consent, and he was not promised anything in return for signing the consent form. The officer stated that the defendant was very cooperative. On cross-examination, however, the officer acknowledged that before the defendant gave oral consent to enter his home, he was handcuffed. The officers removed the handcuffs immediately before the defendant signed the consent form. Later, three uniformed officers arrived in separate cars. They entered the house through the front door and found fifty-two cannabis plants on the second floor.
The defendant and his girlfriend, who was present during the incident, also testified at the suppression hearing. The defendant testified that the police came to his house at 9:10 a.m. and approached him as he was standing about five feet from his front door. He said that Detective Hans-man put a gun to his head, told him to get down, and handcuffed him behind his back. He said the police told him to sign the consent form or they would get a search warrant. He testified that he only signed it because they threatened to arrest his girlfriend if he did not. The defendant’s girlfriend corroborated the defendant’s testimony, but she said she did not hear the defendant give permission to search or see the police enter the house.
At the end of the suppression hearing, the defendant argued that his consent to search was not validly obtained. The trial court denied the motion, finding that the defendant’s consent was freely and voluntarily given. The court rejected the defendant’s evidence that Detective Hansman had a weapon drawn, and found that the defendant “was never threatened in any way, shape, or form with anything.” The court likewise found that the defendant’s girlfriend was not threatened. The court further found that the officers were five or six feet from the open front door and could smell marijuana emitting from the house. The court stated that the defendant “was cooperative, with regards to everything,” and gave consent freely and voluntarily.
A ruling on a motion to suppress is a mixed question of fact and law. Navamuel v. State, 12 So.3d 1283, 1285 (Fla. 4th DCA 2009) (citing Smith v. State, 997 So.2d 499, 500 (Fla. 4th DCA 2008)). “We review orders on motions to suppress to determine whether the trial court’s factual findings are supported by competent substantial evidence and review legal issues de novo.” State v. Young, 971 So.2d 968, 971 *185 (Fla. 4th DCA 2008) (citing Thomas v. State, 894 So.2d 126, 136 (Fla.2004)). “ A trial court’s ruling on a motion to suppress is clothed with a presumption of correctness on appeal, and the reviewing court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustain in the trial court’s ruling.’” Kurecka v. State, — So.3d -, -, 2010 WL 3766727 (Fla. 4th DCA 2010) (quoting State v. Hebert, 8 So.3d 393, 395 (Fla. 4th DCA 2009)). “When considering a motion to suppress, a court is required to consider the ‘totality of [the] circumstances’ that led to the discovery of evidence.” State v. Hendrex, 865 So.2d 531, 533 (Fla. 2d DCA 2003) (citing State v. Butler, 655 So.2d 1123, 1128 (Fla.1995)).
. Entry into a home is permissible only by a warrant, consent, or exigent circumstances. Steagald v. United States, 451 U.S. 204, 211-12, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). Here, the state relies on the defendant’s voluntary consent as justification for the warrantless search of his home. Whether consent is voluntary is a question of fact to be determined by the trial judge, based on the totality of the circumstances. Taylor v. State, 855 So.2d 1, 17 (Fla.2003) (citing Norman v. State, 379 So.2d 643, 646-47 (Fla.1980)); Reynolds v. State, 592 So.2d 1082, 1086 (Fla.1992) (citing United States v. Mendenhall, 446 U.S. 544, 557, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); Schneckloth v. Bustamonte, 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). The trial court’s finding will not be overturned if there is sufficient evidence to support it. Chesnut v. State, 404 So.2d 1064, 1065 (Fla.1981).
“ ‘[W]here the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority.’” Reynolds, 592 So.2d at 1086 (quoting Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)) (alteration in original). Further, “[w]here there is an illegal detention or other illegal conduct on the part of the police, a consent will be found voluntary only if there is clear and convincing evidence that the consent was not a product of the illegal police action. Otherwise, the voluntariness of the consent must be established by a preponderance of the evidence.” Id. (citations omitted). In this case, the defendant argues that the officer’s conduct in handcuffing him and forcing him to the ground constituted an illegal seizure of his person, thus rendering his consent involuntary. He contends that the state failed . to meet its burden under Reynolds to show voluntariness.
In Reynolds, the Florida Supreme Court held that the police may properly handcuff a person whom they are temporarily detaining when circumstances reasonably justify the use of such restraint. Id. at 1085. The court further held that a person’s consent may be considered voluntary when such consent is given while the person is handcuffed during detention. Id. at 1087.. It declined to hold “that consent given while handcuffed .can never be voluntary under any circumstances.” Id.
Contrary to the defendant’s contention, the police did not illegally detain or seize the defendant when they handcuffed him and placed him on the ground. The record reflects that the officer had sufficient facts to form the probable cause necessary to justify detaining or even arresting the defendant during their initial encounter. The trial court found credible the officer’s testimony that he smelled the odor of marijuana emitting from the house when, he first approached the defendant *186 outside his house.[1] See State v. Garcia, 374 So.2d 601 (Fla. 3d DCA 1979) (holding that officers smelling “the odor of marijuana smoke” at the front door of a residence was one factor supporting a finding of probable cause). See also State v. T.P., 835 So.2d 1277 (Fla. 4th DCA 2003) (holding that odor of marijuana justified officer’s detention and search of defendant and his car); State v. K.V., 821 So.2d 1127 (Fla. 4th DCA 2002) (same); State v. Drysdale, 770 So.2d 301 (Fla. 4th DCA 2000) (holding that odor of marijuana detected by officer in home warranted belief that seeds found on living room floor were marijuana seeds and provided probable cause for their seizure). Moreover, the defendant’s spontaneous admission that he had cannabis plants growing inside the house furnished additional support for his seizure. Thus, handcuffing the defendant and securing him on the ground under these circumstances did not constitute unreasonable or unlawful conduct on the part of the police.
Ordinarily, where there was no prior unlawful seizure or other police misconduct, the state need prove voluntariness of the defendant’s consent by only a preponderance of the evidence. Reynolds, 592 So.2d at 1086; Alvarez v. State, 515 So.2d 286, 288 (Fla. 4th DCA 1987). But, as Reynolds recognized, the inherently coercive nature of handcuffing imposes a higher burden on the state to establish that the defendant’s consent was voluntary and not mere acquiescence to a show of police authority. 592 So.2d at 1086. Moreover, because this search was of the defendant’s home, the factors bearing on the voluntariness of his consent to search required more scrutiny. See Kutzorik v. State, 891 So.2d 645, 648 (Fla. 2d DCA 2005) (citing Gonzalez v. State, 578 So.2d 729, 732 (Fla. 3d DCA 1991)). Here, other than the defendant’s being handcuffed on the ground during a lawful detention, the trial court found that there were no other coercive circumstances which affected the defendant’s ability to give free and voluntary consent. The defendant does not point to any other factors — such as his age, education, intelligence, or mental condition— that suggest he was vulnerable and unable to freely consent to a search.
Generally, the fact that a defendant has been taken, into custody or otherwise detained is not sufficient to constitute coercion and render consent involuntary as a matter of law. I.R.C. v. State, 968 So.2d 583, 586 (Fla. 2d DCA 2007) (citing United States v. Watson, 423 U.S. 411, 424, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976)); Grimes v. State, 244 So.2d 130, 133 (Fla.1971); Davis v. State, 226 So.2d 257, 260 (Fla. 2d DCA 1969); Rinehart v. State, 114 So.2d 487, 489 (Fla. 2d DCA 1959). Other factors must be considered in determining whether consent to a search is voluntary, including whether there were other coercive circumstances and conduct by law enforcement that would lead a court to conclude that a reasonable person in the defendant’s position would not have felt free to decline the officers’ request to search. See Kutzorik, 891 So.2d at 647 (citing Bostick, 501 U.S. at 439, 111 S.Ct. 2382, 115 L.Ed.2d 389) (“stating that totality of the circumstances surrounding the encounter must be analyzed”)). Further, “[tjhese factors should not be applied me- *187 chanieally and no single factor is dispositive or controlling.” Wilson v. State, 952 So.2d 564, 570 (Fla. 5th DCA 2007) (citing United States v. Ponce, 8 F.3d 989, 997 (5th Cir.1993)).
Based on the totality of the circumstances in this case, we cannot say that the trial court’s ruling on the motion to suppress was erroneous. First, as discussed above, the detention of the defendant while handcuffed was not unlawful; thus his consent to search was free of the taint of prior illegal police action. Second, there were no other coercive or threatening circumstances present, such as an unreasonable display of police presence outside the defendant’s house or weapons drawn. Only two officers in plain clothes approached the defendant as he stood during daylight hours in front of his home. In addition, the officers did not display any weapons, threaten the defendant or his girlfriend, or make any promises or repeated requests for consent. Finally, the defendant reinforced his oral consent with a signed written consent. See Wilson, 952 So.2d at 570 (upholding trial court’s finding that defendant’s consent to a search of his property was voluntary even though defendant had been accosted at gunpoint by multiple officers where, among other things, nothing indicated that the defendant was mentally deficient or intoxicated; he was on his own property during daytime hours and not in a coercive environment; the encounter was relatively, short; defendant was not threatened or promised anything to induce his consent; and the defendant executed a written consent form); State v. C.S., 632 So.2d 675, 675 (Fla. 2d DCA 1994) (holding that state proved by clear and convincing evidence that juvenile’s consent to officer’s search of his vehicle was voluntary where “the initial stop was lawful; only one officer approached [juvenile]; the officer’s weapon was not drawn; the officer advised [him] that he had the right to refuse consent; and the officer made no threats or misrepresentations”). Although. the record in this case does not show that the officer advised the defendant of his right to refuse consent, this fact alone is not dispositive and does not render consent involuntary; '“[K]nowledge of a right to refuse is not .a prerequisite of a voluntary consent.” Schneckloth, 412 U.S. at 234, 93 S.Ct. 2041.
In concluding that the defendant’s consent was voluntary, the trial court found that the defendant was very cooperative throughout the encounter. It deemed noteworthy the fact that the defendant gave consent to search after he had already volunteered the information that marijuana plants were growing in the house. It is generally recognized that consent to a search may be considered valid when preceded by incriminatory statements, there being no reason to assume that the defendant would not voluntarily consent to a search for evidence if he has already confessed that the evidence is in fact located in the place which the police seek to search. See United States v. Boukater, 409 F.2d 537, 539 (5th Cir.1969) (finding that defendant’s consent to search was voluntary where the defendant acknowledged that he was carrying counterfeit bills in his briefcase before he gave his consent); Saldivar v. State, 209 S.W.3d 275, 284-85 (Tex.App.2006) (defendant’s consent to search found valid where consent given after defendant had told officer that there was cocaine in the glove compartment of his car); State v. Guest, 118 S.C. 130, 110 S.E. 112, 112-13 (1921) (search of defendant’s automobile for whis-ky deemed voluntary where defendant admitted he had whisky in automobile before giving officers the key to the rear compartment where whisky was stored).
*188 In sum, even though the state has a heavy burden to overcome in establishing the voluntariness of consent when a defendant is handcuffed, the record in this case reflects that the state met its burden. We conclude that the trial court did not err in finding that, based on the totality of circumstances, the defendant’s consent was voluntary, rather than mere acquiescence to police authority. Accordingly, we affirm denial of the defendant’s motion to suppress.

Affirmed.

CIKLIN, J., concurs.
HAZOURI, J., concurs specially with opinion.

. The defendant does not. contend that the officer’s detection of the odor of marijuana emanating from his home while standing in front of his home was an invasion of the defendant’s privacy protected by the Fourth Amendment. See State v. Jardines, 9 So.3d 1, 8 (Fla. 3d DCA 2008) (holding that there is no reasonable expectation of privacy at the entrance to property which is open to the public, including the front porch (citing State v. Pereira, 967 So.2d 312, 314 (Fla. 3d DCA 2007))).