TAYLOR, J.
In this appeal from a criminal judgment and sentence, the defendant argues that the trial court erred in denying his motion to suppress evidence because the officers lacked reasonable suspicion to justify his stop and detention. We agree. The stop was based on a vague description provided by an anonymous tipster, and the officers did not observe any unusual or suspicious conduct to give them reasonable cause or founded suspicion to believe that the defendant had committed, was committing, or was about to commit a criminal offense.
An Indian River County deputy responded to a dispatch concerning a disturbance involving several black males. One of the males reportedly had brandished a handgun and fled south. He was described as wearing a white shirt and black or dark shorts and carrying a black square *861 handgun. Several anonymous witnesses, in addition to a mail carrier who identified himself, reported the incident to 911. A helicopter was dispatched to investigate. According to the deputy, the helicopter pilot reported seeing a black male wearing a white shirt, black shorts, and a black jacket about 150 yards from the scene of the disturbance.
The deputy observed a person in the area who fit this description and was standing by a school bus talking to a few men. The deputy did not see the person, later identified as the defendant, doing anything illegal or engaged in any conduct that would make the deputy suspect that he had committed a crime, was committing a crime, or about to commit a crime. When officers arrived at the location, the defendant walked away from the group of men. The deputy exited his vehicle and directed the defendant to come over to him. He said he was concerned that the defendant might be carrying a weapon in his jacket because the weather in early March was too warm for a jacket.
The defendant refused the deputy’s command to come talk to him and continued to walk away. He walked through a gate and up a driveway. The deputy followed him. The defendant continued up the driveway and walked into a home. He took off his jacket and handed it to a woman who was inside the house. He also handed her a large amount of cash.
The deputy reached the front door and demanded that the defendant and the woman come outside. He instructed the woman to bring the jacket with her. After several commands, she gave him the jacket.
While the officer was speaking to the woman, the defendant started to walk away. Another officer approached the defendant, walked him over to a police cruiser, and began to question him. At the same time, one of the officers tossed the jacket onto the patrol car. When he did, a pill bottle “kind of popped up.” The officers examined the bottle and saw plastic bags containing a white substance inside. The defendant was placed under arrest and charged with possessing cocaine with intent to sell and trafficking in Hydroco-done.
The defendant filed a motion to suppress the evidence obtained during his detention. At the suppression hearing, he argued that there was no reasonable suspicion for his stop and detention, and that “innocent details” regarding a suspect’s appearance were insufficient to justify a Terry[1] stop, even if the suspect matched the general description of a suspect involved in a nearby crime. The defendant conceded that the officers could have initiated a consensual encounter, but argued that the encounter here was not consensual because the defendant acquiesced to the officers’ commands to exit the residence and accompany them to the police vehicle despite the fact that he expressed no desire to talk to them.
The defendant also pointed out that when he was stopped, he only partially met the vague description given by the tipsters. The description given of the suspect who brandished a fireman was of a black man wearing a white shirt and dark shorts. There was no mention of the suspect wearing a leather jacket. However, the helicopter pilot directed the deputy to a man who was wearing a heavy black leather jacket.[2]
*862 The trial court denied the motion to suppress, finding that officers had the “required reasonable suspicion for an investigatory stop.” At trial, defense counsel renewed her motion to suppress and, in addition, filed a motion in limine to exclude any testimony concerning the 911 dispatches and BOLOs that reported that the police were seeking a man who had been brandishing a firearm. Defense counsel argued that the investigation leading up to contact with the defendant was irrelevant and prejudicial. The trial court denied the motion in limine and allowed the state to introduce this evidence at trial.
“A trial court’s ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness and the court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court’s ruling.” Terry v. State, 668 So.2d 954, 958 (Fla.1996). An appellate court will defer to the trial court’s factual findings if they are supported by competent and substantial evidence, but the trial court’s legal conclusions are reviewed de novo. See Gonzalez v. State, 59 So.3d 182, 184-85 (Fla. 4th DCA 2011) (citing State v. Young, 971 So.2d 968, 971 (Fla. 4th DCA 2008)).
The law is well-settled that an officer may not conduct an investigatory stop unless the officer has a reasonable or well-founded suspicion that the person has committed, is committing, or is about to commit a criminal offense. Popple v. State, 626 So.2d 185, 186 (Fla.1993) (citing Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)); Kearse v. State, 384 So.2d 272, 273-74 (Fla. 4th DCA 1980); § 901.151(2), Fla. Stat. (2010).
A founded suspicion must be based on more than a hunch or bare suspicion to justify a stop. See, e.g., Coladonato v. State, 348 So.2d 326, 327 (Fla.1977); accord Mullins v. State, 366 So.2d 1162, 1163 (Fla.1978); see also Coleman v. State, 333 So.2d 503, 503 (Fla. 4th DCA 1976). “A ‘founded suspicion’ is a suspicion which has some factual foundation in the circumstances observed by the officer, when those circumstances are interpreted in the light of the officer’s knowledge.” State v. Stevens, 354 So.2d 1244, 1247 (Fla. 4th DCA 1978) (citing Coleman, 333 So.2d at 503). “Mere suspicion is no better than random selection, sheer guesswork, or hunch, and has no objective justification.” Id. (citing Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; Thomas v. State, 250 So.2d 15 (Fla. 1st DCA 1971)).
In J.L. v. State, 727 So.2d 204, 208 (Fla.1998), aff'd, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), the Florida Supreme Court held that police officers cannot conduct an investigatory stop based upon an anonymous tip unless they observed “additional suspicious circumstances as a result of the independent investigation [of the tip].” In J.L., the police received an anonymous tip that several young black males were standing at a bus stop during daylight hours. Id. at 205. “The anonymous informant stated only that one of the individuals, the one wearing the ‘plaid-looking’ shirt, was carrying a gun.” Id. The police stopped and frisked J.L., who was wearing a plaid shirt. Id. Before stopping him, the police did not see J.L. or the other males engaged in any *863 suspicious or illegal conduct or observe any suspicious circumstances. Id. The court concluded that the tip, which described innocent details of identification, required corroboration through independent police investigation of observable suspicious conduct to justify a Terry stop and frisk. Id. at 207-208. The court also rejected the state’s argument that there should be a “firearms exception” to the reasonable suspicion test. Id. at 208-09 (quoting Commonwealth v. Hawkins, 547 Pa. 652, 692 A.2d 1068, 1071 (Pa.1997)).
The Florida Supreme Court reaffirmed these principals in Baptiste v. State, 995 So.2d 285, 292-93 (Fla.2008). There, the court again concluded that the police lacked the necessary reasonable suspicion to initiate an investigative stop where the stop was initiated solely based upon the uncorroborated report of an anonymous tipster. Id. at 300-01. In Baptiste, an anonymous caller reported that a black male wearing a white T-shirt and blue jean shorts was brandishing a firearm in public. Id. at 288. Although Baptiste matched the description provided, when officers arrived on the scene he was not engaged in any unlawful or unusual conduct or suspicious behavior. Id. at 293. When police seized Baptiste, “he was merely walking down the street.” Id. at 296.
In J.H. v. State, 106 So.3d 1001 (Fla. 3d DCA 2013), the Third District Court of Appeal recently found an investigatory stop invalid under similar circumstances. In that case, a police officer followed up on an anonymous tip that there was a fight between several males, one of whom was wearing black clothing and carrying a ta-ser. Id. at 1002. When the officer arrived on the scene, there were about thirty people standing around, and the officer did not observe a fight or see anyone except J.H. wearing black clothing. Id. Because J.H. was wearing clothing that matched the anonymous tip description and appeared to be nervous, the officer ordered him to come to her car and then patted him down. Id. at 1002-03. The Third District concluded that the officer did not have reasonable suspicion to conduct the stop. Id. at 1003-04. “The sole basis for the Officer’s search and seizure of J.H. was the anonymous tip, which the Officer failed to corroborate.” Id. at 1004.
Here, the trial court found that an anonymous tipster informed police that a black male wearing a white shirt and dark shorts fled south after brandishing a firearm. Although the trial court also found that a mail carrier, who identified himself and gave a phone number, reported the same crime, the court did not find, and there is no record evidence, that the mail carrier also provided officers with a description of the subject. Based on the record in this case, we conclude that the tip which led to the officer’s encounter with the defendant was anonymous. The instant case is virtually indistinguishable from J.H., J.L., and Baptiste. The anonymous tipster in this case gave a vague description of a subject who “brandished” a handgun. The tipster provided police with no information regarding the suspect’s age, build, or other identifiable characteristics other than his race and gender and a generic description of his clothing. The defendant did not even fully meet the description provided by the anonymous tipster. Although he was wearing dark shorts and a white shirt as reported, he was also wearing a black leather jacket over his white shirt. The black jacket was not included in the tip.
Moreover, the officers did not observe the defendant engaged in any unusual or suspicious behavior before stopping him. The officers had no objectively reasonable basis for ordering the defendant out of a home simply because he was walking away *864 from the area of a disturbance, matched a vague description of a subject who brandished a firearm, and was wearing a heavy-jacket that appeared inappropriate for the weather. None of these facts indicated that the defendant had just committed or was about to commit a crime. The sole basis for the officer’s stop and detention of the defendant was the anonymous tip, which the officer was unable to corroborate. Because the totality of the facts and circumstances did not provide reasonable suspicion to stop and detain the defendant, the trial court should have granted the motion to suppress the evidence seized as a result of the stop and detention.
Accordingly, we reverse appellant’s conviction for trafficking in Hydrocodone and possession of cocaine with intent to distribute. Because the Hydrocodone and cocaine must be suppressed, the defendant is entitled to discharge on these charges.[3] See Hunter v. State, 32 So.3d 170, 175 (Fla. 4th DCA 2010) (reversing denial of motion to suppress and remanding with instructions to discharge the defendant on the drug possession charge); Gray v. State, 550 So.2d 540, 541 (Fla. 4th DCA 1989) (reversing denial of motion to suppress and remanding with instructions to discharge the defendant on drug trafficking charge).

Reversed and Remanded, with instructions for the court to discharge appellant on both charges.

MAY and GERBER, JJ., concur.

. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

. The record does not support the trial court's finding that the helicopter pilot had observed the suspect put on a dark jacket. In fact, the *862 deputy testified to the contrary. The deputy clarified that the pilot had not reported seeing a subject 150 yards from the area of the disturbance meeting the description and putting on a black jacket. The initial description made no mention of a jacket at all and there was no testimony that the pilot saw the defendant putting on a jacket, only that when the pilot and deputy first saw the defendant in the area, he was wearing a jacket.

. Because there will be no retrial of the charges in this case, we need not address the admission of evidence of die 911 and BOLO reports regarding the firearm.