DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**JERMAINE HENDERSON,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D11-1533 & 4D11-3737

[August 13, 2014]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; John Kastrenakes, Judge; L.T. Case No. 2006CF006108CMB.

Antony P. Ryan, Regional Counsel, Office of Criminal Conflict and Civil Regional Counsel, Fourth District, and Richard G. Bartmon, Assistant Regional Counsel, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Melynda L. Melear, Assistant Attorney General, West Palm Beach, for appellee.

CONNER, J.

Jermaine Henderson, the defendant, challenges his convictions for first-degree murder with a firearm, robbery with a firearm, attempted robbery with a firearm, and conspiracy to commit robbery with a firearm, raising three issues. We affirm without discussion both issues regarding the jury's request for the read-back of testimony. We also affirm the third issue, regarding the trial court's denial of the defendant's motion to suppress, but write to address the defendant's argument that the police did not have valid consent to conduct a search of his residence.

*Factual Background and Trial Court Proceedings*

The following facts were revealed during the hearing on the motion to suppress. Pursuant to an open warrant on a charge unrelated to this case, Officer Seltzer arrested the defendant outside the motel efficiency

apartment where he lived with his girlfriend and children.  At the time, the defendant was a suspect in the murder and robberies at issue on appeal.  Officer Seltzer searched the defendant's motel room and found ammunition.  Subsequent to the discovery of the ammunition, Officer Reynolds and Assistant Chief Smith arrived at the motel as backup.  Since Officer Seltzer was deceased at the time of the hearing, Smith and Officer Reynolds testified that Officer Seltzer told them that he had oral consent from the defendant's live-in girlfriend to conduct the first search, which led to the discovery of the ammunition.  Once Smith arrived, he directed Officer Reynolds to obtain a written consent from the defendant's girlfriend to search the room again for a firearm.  The written consent of the girlfriend was obtained.  Smith and Officer Seltzer proceeded to search the motel room for a firearm.

The defendant was in a police vehicle while Smith and Officer Seltzer searched the room for the firearm.  Officer Reynolds was standing next to the vehicle.  The defendant told Officer Reynolds of his concern that his girlfriend would be arrested and their children would be placed in the custody of the Department of Children and Families.  Officer Reynolds did not respond to the defendant's comments.  Soon thereafter, the defendant made an unsolicited offer to Officer Reynolds to "show them where the gun is."  Officer Reynolds brought the defendant to the motel room, where the defendant directed police to a satchel which contained a firearm and additional ammunition.

The trial court denied the motion to suppress, finding that the defendant's girlfriend gave valid third-party consent to search the motel room and the defendant acquiesced to the search.  This appeal follows.

*Legal Analysis*

The defendant argues three points on appeal in support of reversing the order denying his motion to suppress: (1) since his girlfriend and Officer Seltzer did not testify at the suppression hearing, the State did not provide appropriate proof that the police had consent to conduct the first search;[1]

---

[1] The defendant argues the ammunition found during the first search should have been suppressed because no one could testify as to where Officer Seltzer found the ammunition.  Officer Seltzer never wrote in his report or relayed to another officer where the ammunition was found.  In tandem with his second point on appeal, the defendant argues that because it is unknown whether the ammunition was found in an area of the motel room open to both occupants or in bags or containers over which the defendant alone asserted control, the ammunition should have been suppressed.

2

(2) his girlfriend did not have the authority to consent to the search of his personal property; and (3) his offer to assist the officers in the search for the firearm was not voluntary. As to his third point, the defendant further argues that he was under duress because he believed his girlfriend would be arrested and his children would go into the custody of the Department of Children and Families. Additionally, the defendant contends that the handcuffs and the presence of three officers in the motel room created a coercive and intimidating atmosphere, thus negating the voluntary nature of his acts.

Appellate courts apply a mixed standard of review to the trial court's ruling on a motion to suppress. *Springer v. State*, 125 So. 3d 271, 272 (Fla. 4th DCA 2013). The trial court's findings of fact are presumed correct if they are supported by competent, substantial evidence, but the trial court's application of law to those facts is reviewed de novo. *Id.*

"A warrantless search is per se unreasonable under the Fourth Amendment. However, a search will be considered lawful if conducted pursuant to consent which was given freely and voluntarily." *Hernandez v. State*, 80 So. 3d 416, 419 (Fla. 4th DCA 2012) (citations omitted). Whether a consent is voluntary is a question of fact to be determined from the totality of the circumstances. *Reynolds v. State*, 592 So. 2d 1082, 1086 (Fla. 1992). "Those circumstances include whether the person is detained; the length of the detention; any subtly coercive police questions; the education, intelligence, and possible vulnerable subjective state of the person; and the lack of effective warnings." *State v. McCord*, 833 So. 2d 828, 830 (Fla. 4th DCA 2002) (citations omitted). "Generally, the fact that a defendant has been taken into custody or otherwise detained [by itself] is not sufficient to constitute coercion and render consent involuntary as a matter of law." *Gonzalez v. State*, 59 So. 3d 182, 186 (Fla. 4th DCA 2011). However, the inherently coercive nature of handcuffing places a higher burden on the State to establish that the handcuffed defendant voluntarily consented and that consent was not a mere acquiescence to a show of police authority. *Id.*

The trial court found by a preponderance of the evidence that Officer Seltzer had valid third-party consent from the defendant's girlfriend to conduct the first search, which led to the discovery of ammunition in the motel room. As to the second search, which revealed the firearm and additional ammunition, the trial court applied the clear and convincing evidence standard to determine whether the written consent was voluntary. The trial court apparently understood "the essential purpose of the clear and convincing evidence requirement is to place the burden on the State to demonstrate an 'unequivocal break in the chain of illegality

3

sufficient to dissipate the taint of prior official illegal action.'" *Alvarez v. State*, 515 So. 2d 286, 288-89 (Fla. 4th DCA 1987). As commented by the trial court, "worst-case scenario, assuming that the first search of the projectiles was illegal," clear and convincing evidence would be the standard to determine if consent was voluntary as to the second search. However, the trial court did not make any finding about an unequivocal break between the first search, which uncovered the ammunition, and the subsequent search for the firearm.

Although much of the arguments below and on appeal revolve around whether the consents to search given by the defendant's girlfriend were legally valid, we determine the unsolicited offer by the defendant to show the location of the firearm is the critical factor that must be assessed. The State argues, and we agree, that the defendant's unsolicited offer to show the police the location of the firearm was a sufficient break in the chain of any arguable illegality as to the first and second searches.

Courts in other jurisdictions have held that a defendant's unsolicited offer to allow a search mitigates the effect of any unlawful police conduct. *See United States v. Pedroza*, 269 F.3d 821, 827-28 (7th Cir. 2001) (holding that the defendant's volunteered permission for DEA agents to search his house and his car, without being asked, was an independent act of free will which was not tainted by a prior illegal pat-down search); *United States v. Martinez*, 166 F.3d 340 (5th Cir. 1998) (holding that the defendant's unsolicited consent to search his vehicle cured any defect from an improper traffic stop); *United States v. Mendoza-Salgado*, 964 F.2d 993, 1012-13 (10th Cir. 1992) (holding that co-tenant's unsolicited consent to search sufficiently purged the government agents' warrantless entry of any primary taint and rendered the subsequent search valid); *State v. Phillips*, 222 P.3d 738, 741 (Or. Ct. App. 2009) (citing *State v. Rodriquez*, 854 P.2d 399 (Or. 1993); *State v. Kennedy*, 694 P.2d 99 (Or. 1981)) (holding that the defendant's unprompted offer to allow the officer to search his vehicle sufficiently severed the causal connection between the unlawful police conduct and the discovery of the evidence).

Although no Florida case appears to directly address the issue, we hold that under the totality of the circumstances in this case, the defendant's unsolicited offer to show the police the location of the firearm severed the causal connections between any unlawful police conduct and the discovery of evidence. We also note that the defendant had the opportunity to refute or repudiate his girlfriend's consent to the second search. Instead, he endorsed her consent by offering his own unsolicited consent and assistance. The defendant's subjective concerns that his girlfriend would be arrested were not introduced or encouraged by officers. The

officers were under no obligation to reassure the defendant that his girlfriend would not be arrested. Although the defendant was in handcuffs when he offered to show the location of the firearm, there is no evidence that officers created a coercive atmosphere to prompt the offer. The defendant was alone inside a police cruiser and Officer Reynolds was standing outside the vehicle. Officer Reynolds was not trying to engage the defendant in conversation; instead, it was the defendant who expressed his subjective concerns and insisted that Officer Reynolds take him to the room so that he could show the location of the firearm. His unsolicited offer to show the location of the firearm was not a mere acquiescence to a show of police authority. *See Gonzalez*, 59 So. 3d at 186.

In sum, we conclude that the defendant's unsolicited offer to show the location of evidence cured any defect in the officer's conduct and based on the totality of the circumstances that offer was unsolicited and voluntary. Accordingly, we affirm the defendant's conviction and sentence.

*Affirmed.*

LEVINE and KLINGENSMITH, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

5