953 So.2d 655 (2007)
STATE of Florida, Appellant,
v.
William Steven KENNEDY, Appellee.
No. 1D05-6199.
District Court of Appeal of Florida, First District.
March 30, 2007.
Bill McCollum, Attorney General, and Bryan Jordan, Assistant Attorney General, Tallahassee, for Appellant.
Terry N. Silverman, Gainesville, for Appellee.
WEBSTER, J.
The state seeks review of an order granting appellee's motion, made in his criminal prosecution for conspiracy to manufacture methamphetamine, to suppress evidence and statements. We have jurisdiction. Art. V, § 4(b)(1), Fla. Const. (granting to district courts of appeal jurisdiction to "review interlocutory orders . . . to the extent provided by rules adopted by the supreme court"); Fla. R.App. P. 9.140(c)(1)(B) (permitting appeals by the *656 state of "order[s] . . . suppressing before trial confessions, admissions, or evidence obtained by search and seizure"). We conclude that the trial court erroneously failed to apply the correct law and that, upon application of the correct law, no violation of appellee's Fourth Amendment rights occurred. Accordingly, we reverse.
The pertinent facts are not in dispute. Law enforcement personnel who were members of a "Tri-County Drug Task Force" learned from two people (Garrison and Hines) who were involved in the manufacture of methamphetamine that appellee was also manufacturing methamphetamine; that Garrison and appellee were involved in a "feud" over the theft by appellee of anhydrous ammonia, a chemical used to make methamphetamine; and that Garrison had intended to place a bomb in appellee's house.
Between eight and ten members of the task force went to appellee's house. According to the leader of that group, although they had no reason to believe that a bomb had actually been placed or "exigent circumstances" to support going onto appellee's property, they went to appellee's house both to warn appellee of the threat that had been made against appellee and to investigate the possibility that appellee was manufacturing methamphetamine. Appellee's yard was not fenced, although it may have been posted with "No Trespassing" signs. As the task force leader approached appellee's front door, he smelled odors of anhydrous ammonia and ether, which he knew were consistent with the manufacture of methamphetamine. Based upon those odors, the task force leader arrested appellee as soon as appellee opened the front door. He then told appellee about the bomb plot. Because the task force had been led to believe that another individual was involved in helping appellee make methamphetamine, they conducted a "protective sweep" of the house. It was immediately apparent that a methamphetamine lab had been in operation. At that point, the house was secured and the leader of the task force went to obtain a search warrant.
Both in his motion to suppress and at the hearing on that motion, the only argument made by appellee was that his Fourth Amendment rights had been violated because the law enforcement officers went onto his property without either a warrant or "exigent circumstances." He argued that exigent circumstances did not exist because the real reason the task force had gone onto his property was to investigate the possibility that he was manufacturing methamphetamine, and that the claim that the task force went there to warn him about the bomb threat was nothing more than a pretext. The state responded that suppression was not appropriate because the law enforcement personnel were lawfully on appellee's property and the odors of anhydrous ammonia and ether detected as they approached the front door provided probable cause for appellee's arrest and the ensuing protective sweep of the house. The trial court found that the claim that the task force had gone to appellee's house principally to warn him about the bomb threat was a pretext, and that the real reason the task force had gone onto appellee's property was to investigate the possibility that appellee was manufacturing methamphetamine. Based on that finding, the trial court held that exigent circumstances did not exist to permit the task force to go onto appellee's property without first obtaining a search warrant and that, as a result, appellee's Fourth Amendment rights had been violated. Accordingly, it granted the motion to suppress. This appeal follows.
The trial court's legal analysis is flawed in several respects. As the state correctly argued, appellee's Fourth Amendment rights were not violated when *657 law enforcement personnel crossed the unenclosed front yard to reach the front door. See, e.g., United States v. Santana, 427 U.S. 38, 42, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976) (stating that the threshold of one's dwelling is a "public" place, as to which the owner has no expectation of privacy); State v. Morsman, 394 So.2d 408, 409 (Fla.1981) (stating that, "[u]nder Florida law it is clear that one does not harbor an expectation of privacy on a front porch . . .") (citations omitted); Davis v. State, 763 So.2d 519, 520-21 (Fla. 5th DCA 2000) (stating that law enforcement "presence on the porch did not invade any expectation of privacy . . .") (citations omitted); Wysong v. State, 614 So.2d 670, 671 (Fla. 4th DCA 1993) (stating that "[n]either thresholds nor [unfenced front yards] are within the scope of the Fourth Amendment") (citing Oliver v. United States, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984)). This is so regardless of whether the property was posted with "No Trespassing" signs. Id. (quoting from State v. Sarantopoulos, 604 So.2d 551, 555 (Fla. 2d DCA 1992)). When the lead officer smelled the odors of anhydrous ammonia and ether, which he knew were consistent with the manufacture of methamphetamine, probable cause existed to arrest appellee, a point which appellee does not contest. Law enforcement's subjective motivation is irrelevant. Rather, the test is an objective onewould a reasonable officer have acted the same way, given all of the circumstances. See Brigham City v. Stuart, ___ U.S. ___, 126 S.Ct. 1943, 1948, 164 L.Ed.2d 650 (2006); Devenpeck v. Alford, 543 U.S. 146, 153-54, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004); Whren v. United States, 517 U.S. 806, 813-16, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Finally, post-arrest protective sweeps of spaces outside the immediate area of the arrest are permissible provided there exist "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Maryland v. Buie, 494 U.S. 325, 334, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). Here, the information possessed by the task force indicated that another individual was involved in helping appellee make methamphetamine. Moreover, it is clear from the evidence that the sweep was appropriately limited and lasted no longer than necessary to dispel the reasonable suspicion of danger and clear the house of other individuals, at which point the house was secured while a warrant was sought.
Because the trial court failed to apply the correct law and, upon application of the correct law, it is clear that appellee's Fourth Amendment rights were not violated, we reverse the order granting appellee's motion to suppress.
REVERSED.
ALLEN and ROBERTS, JJ., concur.