975 So.2d 1163 (2008)
Christopher Lee COX, Appellant,
v.
STATE of Florida, Appellee.
No. 1D07-2074.
District Court of Appeal of Florida, First District.
March 6, 2008.
*1165 Nancy A. Daniels, Public Defender, and Glen P. Gifford, Assistant Public Defender, Tallahassee, for Appellant.
Bill McCollum, Attorney General, C. Bowen Robinson and Philip W. Edwards, Assistant Attorneys General, Tallahassee, for Appellee.
BROWNING, C.J.
Christopher Lee Cox (Appellant) appeals a final order imposing probation after entry of a plea reserving his right to challenge the denial of his dispositive motion to suppress evidence. Because the trial court correctly concluded that the officer had a well-founded suspicion to stop and detain Appellant and his passenger, we affirm.
An amended information charged Appellant with possession of a controlled substance (cocaine), possession of drug paraphernalia, and driving while the license is cancelled, suspended, or revoked. The charged offenses occurred on September 9, 2006. Appellant moved to suppress the evidence obtained as a result of an allegedly *1166 illegal traffic stop and detention. At the suppression hearing, defense counsel's sole argument was that the officer who stopped Appellant lacked a reasonable, articulable suspicion of criminal activity connected to Appellant. To support the motion, counsel cited Zelinski v. State, 695 So.2d 834 (Fla. 2d DCA 1997) (concluding that an investigatory stop was unlawful because the officer who responded to a report of a "suspicious person" who had left a convenience store lacked a well-founded suspicion that defendant or other occupants of the vehicle parked on the back of the property with its lights off were involved in criminal activity). After the motion was denied, Appellant pled no contest to the charges while reserving the right to appeal the denial of his motion to suppress, which was deemed dispositive. He was placed on one year of probation.
Although the trial court's "determination of historical facts" is presumed correct, we must "independently review mixed questions of law and fact that ultimately determine constitutional issues" arising from the Fourth Amendment. Connor v. State, 803 So.2d 598, 608 (Fla. 2001); see Ornelas v. United States, 517 U.S. 690, 697-98, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). We review de novo the legal conclusions drawn from the facts. See Connor, 803 So.2d at 606; Sizemore v. State, 939 So.2d 209, 211 (Fla. 1st DCA 2006). We are constitutionally required to interpret search and seizure issues in conformity with the Fourth Amendment, as interpreted by the United States Supreme Court. See Art. I § 12, Fla. Const.; Perez v. State, 620 So.2d 1256, 1258 (Fla.1993). Evaluating the legality of an officer's actions involves an objective examination of the totality of the circumstances. See Illinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Judgments are presumed correct, and Appellant carries the burden to demonstrate that prejudicial error occurred and that the error was preserved in the trial court. See § 924.051(7), Fla. Stat. (2006); Goodwin v. State, 751 So.2d 537, 544 (Fla.1999); Woods v. State, 905 So.2d 246, 247 (Fla. 4th DCA 2005). Our review of the record demonstrates that the trial court's factual findings are supported by competent substantial evidence and that the law was correctly applied to the facts.
First, we address the traffic stop and detention. Section 901.151(2), Florida Statutes (2006), states:
Whenever any law enforcement officer of this state encounters any person under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county, the officer may temporarily detain such person for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding the person's presence abroad which led the officer to believe that the person had committed, was committing, or was about to commit a criminal offense.
This is a codification of the principle that all warrantless seizures of a person must be founded on at least a reasonable suspicion that the individual seized is engaged in wrongdoing. See United States v. Mendenhall, 446 U.S. 544, 552, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (noting that the Fourth Amendment requires all searches and seizures to have "an objective justification"); Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Golphin v. State, 945 So.2d 1174, 1180 (Fla.2006). An officer's stopping a person's motor vehicle constitutes a seizure and detention under the Fourth Amendment. See *1167 McNichols v. State, 899 So.2d 1197, 1199 (Fla. 5th DCA 2005).
At the suppression hearing, patrol officer James Arnette, a 20-year veteran with the Florida Game and Freshwater Fish Commission, testified that he was working alone in a rural, sparsely populated area in Okaloosa County. Officer Arnette is a trained, experienced gunman who usually, depending on the distance, can distinguish among the sounds made by a rifle, a shotgun, a pistol, and a vehicle backfiring. Hearing what he thought was the cracking noise of a rifle shot coming from the southeast, probably a mile or 3/4 mile away, the officer drove along a dirtcovered public thoroughfare in the direction toward which he had "coursed" the shot. He was aware of complaints about illegal night hunting for deer in that area. He observed only one set of fresh vehicular tracks on the dew-covered road and knew that the road, about 1-1/4 mile long, led to a dead-end at a large field commonly known as a "raised bird field" populated by a lot of deer.
After driving about 1/4 mile along that road, Officer Arnette encountered only one vehicle, a four-wheel-drive truck proceeding at "a pretty good clip" for dirt-road driving. The officer did not think there was any other entrance to that road. Observing only one vehicle coming from the direction of the rifle shot, Officer Arnette engaged his blue light and moved to stop the truck, which veered to the right on the fairly narrow road as if trying to keep going. Officer Arnette testified that the location of the truck was expected if the shooter had left the suspected shooting area after the shot was fired.
The articulable, reasonable suspicion necessary to justify a lawful investigatory stop or detention is "not readily, or even usefully, reduced to a neat set of legal rules," and the courts must consider the totality of the circumstances. Gates, 462 U.S. at 232, 103 S.Ct. 2317; United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). This "founded suspicion" in the officer's mind "is a suspicion which has some factual foundation in the circumstances observed by the officer, when those circumstances are interpreted in the light of the officer's knowledge." State v. Stevens, 354 So.2d 1244, 1247 (Fla. 4th DCA 1978). This is more than a "mere" or "bare" suspicion but need not rise to the level of probable cause. See Hunter v. State, 660 So.2d 244, 249 (Fla. 1995); Brandin v. State, 669 So.2d 280, 282 (Fla. 1st DCA 1996).
Among the pertinent factors in determining whether Officer Arnette had a founded suspicion that Appellant and/or his passenger were involved in criminal activity are the time of day, the location, the timing of the events, the route of the flight, and "anything incongruous or unusual in the situation as interpreted in the light of the officer's knowledge." Stevens, 354 So.2d at 1247; see Hunter, 660 So.2d at 249. Officer Arnette was patrolling late at night in a desolate, rural area when he heard what (from his experience) sounded like rifle shots. Concerned about reports of illegal night hunting in the area, he drove in the direction of the suspected shot, saw fresh tracks on the road, and stopped the only vehicle coming from the direction of the dead-end dirt road. The timing was such that the shooter very likely would have been in that location if he or she had left the site of the shot. Because Officer Arnette had a founded, reasonable suspicion that occupants of the truck were connected to the shot fired, he was justified in stopping the truck. See Johnson v. State, 696 So.2d 1271 (Fla. 5th DCA 1997) (concluding that officer had reasonable suspicion to suspect that pedestrians defendant and his companion, the *1168 only persons observed in the area, had been engaged in the illegal activity of firing a shot at an urban intersection at 1:30 a.m., so as to justify stopping them, where the officer responded 3-5 minutes after the call and observed the suspects four blocks from the reported site of the shot, and the suspects denied hearing a shot); State v. Hall, 652 So.2d 484 (Fla. 5th DCA 1995) (holding that the stop was justified and the trial court erred in granting a motion to suppress, where two gunshots were heard in town at 1:00 a.m. on an unusually quiet night and the officer, located no more than one block away from the shots, stopped bicyclists defendant and his companion, the first people the officer had seen on the streets for at least an hour and a half); State v. Brooks, 281 So.2d 55 (Fla. 2d DCA 1973).
Next, we consider Appellant's challenge to the search of Appellant's truck and the scope of the search. Generally, a law enforcement officer may validly seek consent to search a vehicle during a legal traffic stop. See Schneckloth v. Bustamonte, 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The officer need not have an objective justification or reasonable suspicion to ask for consent to search. See Watts v. State, 788 So.2d 1040, 1042-43 (Fla. 2d DCA 2001). To validate a warrantless search, the State must show that the search falls within a constitutional exception, one of which is voluntary consent. See Hicks v. State, 852 So.2d 954, 960 (Fla. 5th DCA 2003). Consent must be given unequivocally and not be mere deference to the apparent authority of the police. See Thompson v. State, 555 So.2d 970, 971 (Fla. 2d DCA 1990). A search conducted pursuant to freely and voluntarily given consent is lawful. See Jorgenson v. State, 714 So.2d 423, 426 (Fla.1998). Whether consent is voluntary is a question of fact to be determined under the totality of the circumstances and established by a preponderance of the evidence. See id.; Oliver v. State, 642 So.2d 840, 841 (Fla. 4th DCA 1994). To conclude that a search is involuntary, the court must find that the defendant's "will [was] overborne and his capacity for self-determination critically impaired." Schneckloth, 412 U.S. at 225, 93 S.Ct. 2041; Wilson v. State, 952 So.2d 564, 569 (Fla. 5th DCA 2007). Among the factors to be considered in determining whether consent to search is voluntary are the time and location of the encounter, the number of officers present, and the officer's words and actions. See Kutzorik v. State, 891 So.2d 645, 647 (Fla. 2d DCA 2005).
Officer Arnette testified that when he exited his vehicle and approached Appellant's truck, he was looking for a "long gun" or rifle of the type that would have produced the sound he had heard. As he walked toward the truck, the officer saw the passenger bend over and lower his hands. The passenger had a panicked look on his face. Concerned about the possible presence of a firearm, the officer backed off for safety reasons and yelled for both men to show their hands. Officer Arnette thought that he had drawn his weapon when he saw the passenger furtively placing his hands down by the side of his leg. Officer Arnette had his gun ready as he moved away from Appellant's truck, but he never pointed it forward. He did not think he ever removed the gun completely from its unsnapped holster. Appellant immediately complied with the officer's instructions, but the passenger had to be reminded to show his hands. After the two men complied, the officer put away his weapon.
Officer Arnette recognized Appellant and asked whether the men had any weapons on them. They answered "No." When Appellant was asked what he was doing, Appellant stated they were going to the river. When the officer pointed out that the river is in the opposite direction, Appellant *1169 smiled and said "Well, we're just riding around." When he was asked again if they had any guns, Appellant replied: "Nope, we don't have any guns. You're welcome to look." Appellant stepped out of the truck. Officer Arnette asked: "Do you mind if I look in your truck for guns?" Appellant answered "Nope, go right ahead. Don't have any." Officer Arnette never demanded to search the truck; he wanted Appellant's permission, and he wanted him to know what the officer was looking for.
He lifted the back of the driver's seat and saw no firearm or deer, but he observed a small package containing what looked like a "rock" of crack cocaine and a bent beer can of the type used to "do" or smoke crack cocaine. Because he did not yet have a back-up patrol, the officer did not disclose his discovery yet. Instead, he asked the two men to step to the front of the truck to secure them as he called for back-up assistance.
Except in instances of fundamental error, to properly preserve an issue, legal argument, or objection to evidence, the complainant must timely raise the matter and get a ruling by the trial court, assuring that the issue, legal argument, or objection is sufficiently precise to inform the court of the relief sought and the grounds for relief. See § 924.051(1)(b) & (3), Fla. Stat. (2006); Reynolds v. State, 934 So.2d 1128, 1140 (Fla.2006); Harrell v. State, 894 So.2d 935, 939-40 (Fla.2005). In the written motion to suppress and in oral argument at the suppression hearing, defense counsel presented one ground for relief: that the officer's stopping Appellant's vehicle and detaining the occupants was illegal because the officer lacked a founded suspicion of criminal activity connected with the occupants.
For the first time on appeal, Appellant argues that even if Officer Arnette had a reasonable suspicion to stop Appellant's truck and detain the occupants, Appellant's consent was invalid because he merely acquiesced to the officer's show of authority, and the search of the interior of the vehicle is illegal because it exceeded the scope of the consent. Assuming arguendo that this specific argument had been raised, ruled on, and thereby preserved in the trial court, the State correctly notes that Officer Arnette's statements and actions were justified in light of his observations, that Appellant freely and voluntarily consented to a search of the truck, and that the scope of the officer's search was objectively reasonable: i.e., what a reasonable person, under the circumstances (including the purported purpose of the search) would understand was the scope of consent based on the interaction between the officer and the suspect. See Florida v. Jimeno, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991); Miami-Dade Police Dep't v. Martinez, 838 So.2d 672, 675 (Fla. 3d DCA 2003); Oliver, 642 So.2d at 841.
The trial court correctly denied the motion to suppress. The judgment and sentence are AFFIRMED.
BARFIELD and DAVIS, JJ., concur.