MARSTILLER, J.
Keith Mathis appeals his convictions and sentences for possession of a firearm by a violent career criminal (Count I) and possession of a firearm by a convicted felon (Count II). We affirm the conviction and sentence on Count I. But we agree with Mathis that double jeopardy bars his conviction and sentence for possession of a firearm by a convicted felon. Like the defendant in Pryor v. State, 48 So.3d 159 (Fla. 1st DCA 2010), Mathis cannot be punished for both firearm possession by a violent career criminal and firearm possession by a convicted felon. Section 775.021(4)(b)3., Florida Statutes (2007), provides that one can be convicted and sentenced “for each criminal offense committed in the course of one criminal episode or transaction,” except for “[o]f-fenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.” Because possession of a firearm by a convicted felon is a lesser-included offense of possession of a firearm by a violent career criminal, see Williams v. State, 776 So.2d 358, 359 (Fla. 1st DCA 2001), and Mathis’ convictions arose from a single incident in which he possessed a rifle, the conviction for the lesser offense cannot stand. “Dual convictions in contravention of legislative intent are a violation of the constitutional prohibition against double jeopardy....” Pryor, 48 So.3d at 162. Accordingly, we vacate Mathis’ conviction and sentence on Count II, possession of a firearm by a convicted felon.
Mathis raises four other issues on appeal that present no reversible error by the trial court. But one issue — whether the trial court erred in denying a motion to suppress which alleged no voluntary consent for a warrantless search — merits brief discussion. The target of Mathis’ suppression motion was an assault rifle Alachua County Sheriffs deputies found in a shed next to the trailer Mathis’ girlfriend lives in. Mathis asserted that his girlfriend, Anethia Curtis, was so intimidated by the deputies’ show of force that her consent to their search of her home was involuntary.
At approximately 2:00 a.m. on February 10, 2007, the sheriffs office responded to an emergency call from Scott Baty, who was at a gas station and bleeding heavily from his head. Baty said he had tried to buy drugs from a man he knew only as “Sweat,” and that “Sweat” had struck him in the head with an assault rifle. Baty’s *1091 roommate William Freeburn had witnessed the incident and took deputies to the scene of the assault — Curtis’ trailer. As four armed deputies approached the trailer from outside the fence, Curtis saw them, and after some conversation about why the deputies were there and who they were looking for, allowed two deputies to search her trailer provided they left their rifles outside and that she would be able to accompany them as they searched. Mathis, who occasionally stayed overnight at his girlfriend’s home, and two other men were in the shed located near the trailer and inside the fence surrounding both structures. One of the men emerged from the shed and told deputies Mathis, a/k/a “Sweat,” was inside; Mathis was ordered out. Deputies saw drug paraphernalia in plain view in Curtis’ trailer but no rifle. When the lead deputy, Deputy Rowlands, asked Curtis if he could also search the shed, she told him to “go ahead.” During his initial search of the shed, he saw drugs and drug paraphernalia in the open, and a second, more thorough search yielded an AK-47 assault rifle and ammunition for the firearm.
“[T]he question whether a consent to search was in fact ‘voluntary’ or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.” Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Accord Cox v. State, 975 So.2d 1163, 1168 (Fla. 1st DCA 2008). Consent is involuntary if one’s “will [was] overborne and his capacity for self-determination critically impaired.” Schneckloth, 412 U.S. at 225, 93 S.Ct. 2041. Our de novo review of the facts and circumstances, see Cox, 975 So.2d at 1166, leads us to conclude, as did the trial court, that Curtis was neither forced, nor coerced, nor intimidated into consenting to the search of her trailer and shed. She was awake and saw the four deputies, who were searching for an armed suspect accused of beating a man with an assault rifle, approach her home. She halted their advance before they could enter her fenced yard. The deputies thus remained a distance away from Curtis — indeed, she was inside the trailer — while they sought her consent to search her home. Notably, Curtis negotiated the conditions of the search by insisting that the deputies leave their rifles outside and that she accompany them while they searched. And she testified at the suppression hearing that she knew all the time she could withhold consent. It cannot reasonably be said on these facts that Curtis’ “capacity for self-determination [was] critically impaired.” Rather, she knowingly, voluntarily, and clearly with a great deal of thought, consented to the warrantless search of her home and shed.
AFFIRMED in part; VACATED in part.
WEBSTER and LEWIS, JJ., concur.