MARSTILLER, J.
The State of Florida appeals an order granting Appellee Joseph Lee Smith’s motion to suppress methamphetamine in the manufacturing process that sheriffs deputies found, via warrantless search, under the hood of a truck parked in Smith’s *996 yard.[1] As a result of the search, Smith had been arrested and charged with trafficking in a controlled substance and manufacturing a controlled substance. The. trial court found that neither implied consent by Smith nor exigent circumstances permitted the search and seizure that occurred.
A ruling on a motion to suppress is presumed correct, and the appellate court “must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court’s ruling.” Murray v. State, 692 So.2d 157, 159 (Fla. 1997). Nonetheless, we “ ‘independently review mixed questions of law and fact that ultimately determine constitutional issues’ arising from the Fourth Amendment.” Cox v. State, 975 So.2d 1163, 1166 (Fla. 1st DCA 2008) (quoting Connor v. State, 803 So.2d 598, 608 (Fla.2001)). Findings of fact we review for competent, substantial supporting evidence, and legal conclusions drawn from the facts we review de novo. See generally Butler v. State, 706 So.2d 100, 101 (Fla. 1st DCA 1998). After reviewing and considering the testimony given at the suppression hearing in this case, we conclude we must reverse the order on appeal.
The pertinent facts, as found by the trial court and supported by the record, are as follows. Four days after arresting someone — not Smith — at Smith’s residence for manufacturing methamphetamine, a Dixie County Sheriffs Office investigator, Lt. Michael Brannin, returned to the home to conduct a follow-up investigation. As he approached the front door, he observed a controlled fire burning on the side of the house. He knocked on the door and, when Smith answered, explained why he was there and said he needed to talk to Smith. Smith stepped out the door and accompanied Lt. Brannin into the yard toward the fire. Their path took them past a truck parked in a carport attached to the house. Investigator Brannin asked to see what was in the fire, and Smith went with him, though saying nothing. The only notable item in the fire was an empty lighter fluid container.
All the while, Lt. Brannin could smell lighter fluid in the vicinity. From training and experience, he knew the odor of lighter fluid is associated with methamphetamine manufacture. He eventually determined the odor was coming not from the fire, but from the truck parked about ten feet away. So, he took a nearby lawn chair, positioned it roughly two feet away from the truck and sat down. At about the same time, he summoned a colleague, Officer Jaime King, who was on standby offsite. Smith, meanwhile, pulled up another lawn chair and sat with Investigator Brannin. The two men conversed; Lt. Brannin asked Smith what he was burning in the fire, and Smith responded that it was yard debris.
The investigator turned his attention to the truck and asked Smith about a small light attached to the grille. Smith became visibly nervous. Lt. Brannin then pretended to be interested in buying the truck and asked Smith if he could look under the hood. Smith agreed, and opened the hood himself, which allowed Lt. Brannin to see that a bottle appearing to be a Gatorade bottle was inside the engine compartment, located near the radiator, toward the driver’s side of the truck. He could not see the whole bottle or its contents, and Smith shifted position to keep the bottle obscured.
*997 Officer King arrived at that point, and Smith announced he had to leave to pick up his children from school. Knowing from training and experience that plastic bottles like the one in the truck’s engine compartment are commonly used in the making of methamphetamine, Lt. Brannin asked Smith to hand him the bottle before leaving. Smith obliged, placing the bottle on the ground in front of the truck at the investigator’s direction and walking away. Lt. Brannin then seized the bottle, opened it, discovered it contained ingredients for making methamphetamine, and arrested Smith.
Based on these facts, the trial court determined that Smith did not expressly consent, but impliedly consented to Lt. Brannin’s entry upon his property and search of the yard (the fire) and the truck’s engine compartment. However, the implied consent turned to acquiescence to a show of authority when Officer King arrived on the scene. And Smith’s acquiescence did not authorize Lt. Bran-nin to obtain and search the Gatorade bottle without a search warrant. There, according to the trial court, is where the constitutional violation occurred. The court further concluded there was insufficient evidence of exigent circumstances to excuse the warrantless search. Although Lt. Brannin testified he was concerned about the danger of an explosion, common when methamphetamine is being made, or that Smith would destroy evidence of a crime, the court found that after Smith put the bottle on the ground and moved away, the officers “could have exercised control over the scene and [could] have attempted to obtain a search warrant.”
The State asserts that Smith impliedly consented to all of Lt. Brannin’s actions, but even if he did not, exigent circumstances justified the warrantless search and seizure, and the investigator’s reasonable suspicion of criminal activity would have justified detaining Smith. Smith counters that the trial court wrongly found implied consent for Lt. Brannin to enter the yard or do anything else therein, but in any event, he certainly withdrew his consent when he terminated the encounter by telling officers he needed to leave to pick up his children. Smith agrees with the trial court that no exigent circumstances existed to legitimize the warrantless search and seizure that occurred.
“Warrantless searches ... conducted in a constitutionally protected area ... are per se unreasonable unless they fall within one of the five established exceptions to the search warrant requirement.” Lee v. State, 856 So.2d 1133, 1136 (Fla. 1st DCA 2003) (citing Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). A person’s home and the curti-lage of the home are protected areas. See Powell v. State, 120 So.3d 577, 583 (Fla. 1st DCA 2013) (citing California v. Ciraolo, 476 U.S. 207, 212, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986)). “The five exceptions are for searches (1) with the occupant’s consent, (2) incident to lawful arrest, (3) with probable cause to search but with exigent circumstances, (4) in hot pursuit, or (5) pursuant to a stop and frisk.” Lee, 856 So.2d at 1136 (citing Gnann v. State, 662 So.2d 406, 407 (Fla. 2d DCA 1995)). The exceptions pertinent to this case are consent and exigent circumstances. See Phuagnong v. State, 714 So.2d 527, 530 (Fla. 1st DCA 1998). The State, by asserting that Inspector Brannin had reasonable suspicion of criminal activity, seems to suggest a version of the stop-and-frisk exception may also be pertinent. But the State did not make this argument below, and thus, may not properly raise it on appeal. See Tillman v. State, 471 So.2d 32, 35 (Fla.1985) (“[A]n issue must be presented to the lower court and the specific legal argument or ground to be argued on *998 appeal or review must be part of that presentation if it is to be considered preserved.”).
We turn first, then, to the question of consent. “ ‘The consent may be in the form of words, gesture, or conduct.’ ” Ingram v. State, 928 So.2d 428, 480 (Fla. 1st DCA 2006) (quoting United States v. Griffin, 530 F.2d 739, 742 (7th Cir.1976)). Whether express or implied, consent to a search must be given “freely and voluntarily rather than merely submitting to a claim of lawful authority.” Phuagnong, 714 So.2d at 530. Voluntariness is “determined under the totality of circumstances,” which include, inter alia, the time and location of the encounter, the number of officers present, and the officer’s words and actions. Cox v. State, 975 So.2d 1163, 1168 (Fla. 1st DCA 2008). “[T]he volun-tariness of a consent to search depends on whether — given the totality of relevant circumstances — ‘a reasonable person would understand that he or she [was] free to refuse’ consent.” Luna-Martinez v. State, 984 So.2d 592, 598 (Fla. 2d DCA 2008) (quoting United States v. Drayton, 536 U.S. 194, 197, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002)).
Here, Smith did not expressly consent to a search of his yard and the truck parked in the carport. But we determine from Smith’s conduct,- as did the trial court, that he impliedly consented to Lt. Brannin’s presence in and search of the yard. The circumstances the trial court considered support a finding of voluntary implied consent: Smith walked alongside the officer into the yard and up to the fire, sat down next to him, engaged in consensual conversation with him, and answered his questions about the fire and the truck. Furthermore, Lt. Brannin was the only officer present during this period, and nothing he did or said constituted a show of authority such that Smith was simply acquiescing to it. Similarly, Smith’s opening of the hood of the truck upon Lt. Brannin’s request was voluntary. The fact that the officer used deception to obtain this result does not render Smith’s implied consent involuntary. “Absent coercion, threats or misrepresentation of authority, the courts have long recognized deception as a viable and proper tool of police investigation.” Wyche v. State, 906 So.2d 1142, 1144 (Fla. 1st DCA 2005), approved, 987 So.2d 23 (Fla.2008); cf. State v. BaHling, 989 So.2d 757, 762 (Fla. 4th DCA 2008) (concluding that “the level of trickery went far beyond what law enforcement officers should utilize when trying to gain entry into a citizen’s home in the wee hours of the morning.”).
As to Lt. Brannin’s obtaining the Gatorade bottle, however, we conclude Smith did not impliedly consent, but acquiesced to a show of law enforcement authority with Officer King’s arrival on the scene. The test for determining if someone acquiesced to authority, rather than consented to a search, is an objective one that asks “whether the officer’s words and actions would have conveyed to a reasonable person that he or she was not free to leave.” State v. Parrish, 731 So.2d 101, 103 (Fla. 2d DCA 1999) (citing U.S. v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). It does not appear Officer King said anything at this juncture. And Lt. Brannin testified Smith was free to leave. But as we view the evidence, a reasonable person in Smith’s position would have believed his ability to leave was, indeed, conditioned on his removing the bottle from the truck and handing it over, even if the request was not specifically phrased that way. Moreover, Lt. Brannin directed Smith to place the bottle on the ground in front of the truck. Again, under the circumstances, a reasonable person would think he should comply with the directive, which Smith did.
*999 We also find it significant that Smith did not, in fact, leave after handing over the bottle, but stayed around while Inspector Brannin opened the bottle and discovered its contents. These circumstances show Smith’s submission to the show of authority of the two officers present.
Absent Smith’s voluntary consent, the warrantless seizure and subsequent search of the Gatorade bottle were unlawful, unless there was probable cause with exigent circumstances. This, too, is a totality-of-the-circumstances question. See Lee v. State, 856 So.2d 1133, 1136 (Fla. 1st DCA 2003). Some set of facts must exist that precludes taking the time to secure a warrant. Id. Factors indicating exigent circumstances include the likelihood a delay could cause the destruction of essential evidence or jeopardize the safety of officers or the public. Id. at 1137.
The trial court found there were no exigent circumstances justifying a warrantless search because once Smith removed the bottle from the truck and put it down, the officers had enough time to secure the scene and try to obtain a warrant. However, as just discussed, the point at which the officers lost Smith’s voluntary consent to search was when Lt. Brannin directed him to remove the bottle from the truck’s engine compartment. We conclude, first, there was probable cause to search the truck and remove the bottle. “Probable cause exists to engage in a war-rantless search where ‘the facts and circumstances within [the officers’] knowledge ... [are] sufficient in themselves to warrant’ the belief that an offense has been or is being committed.” Kimball v. State, 951 So.2d 35, 37 (Fla. 1st DCA 2007) (quoting State v. Betz, 815 So.2d 627, 633 (Fla.2002)). Only four days before the search of Smith’s truck, the residence was the scene of a methamphetamine lab investigation, and someone was arrested there for manufacturing the illegal substance. Back again for a follow-up investigation, Lt. Brannin observed a fire burning in the yard, an empty lighter fluid container in the fire, a strong odor of lighter fluid coming from' the truck, and a container resembling a Gatorade bottle hidden in the truck’s engine compartment. Based on his training and experience, he knew lighter fluid and plastic bottles like the one he saw in the truck are commonly used in the making of methamphetamine. In addition, Smith became visibly nervous when asked about the truck, and, after opening the hood, he kept positioning himself as to obscure the bottle from the officer’s sight. These facts and circumstances gave Lt. Brannin probable cause to believe Smith was in the process of making methamphetamine. Cf. State v. Kennedy, 953 So.2d 655, 656-57 (Fla. 1st DCA 2007) (finding officer had probable cause to arrest defendant when, as he approached front door of home, officer smelled odors consistent with the manufacture of methamphetamine); State v. Casey, 528 So.2d 1264, 1265-66 (Fla. 1st DCA 1988) (holding officer’s observation of plastic bag protruding from defendant’s pocket, coupled with defendant’s behavior and officer’s knowledge that the area was commonly used for narcotic transactions and narcotics are commonly packaged in plastic bags, provided sufficient probable cause to seize the plastic bag and arrest the defendant).
As to exigent circumstances, Lt. Bran-nin testified he was concerned Smith would destroy evidence given the close proximity of the fire to the truck, and that a potentially dangerous situation could arise given the explosive nature of methamphetamine manufacture. Regarding the latter concern, “the operation of a methamphetamine lab is inherently dangerous, presents an immediate threat to public safety, and is well within the scope of the exigent circumstances exception.” Barth v. State, 955 So.2d 1115, 1118 (Fla. *1000 2d DCA 2006). Based on the open fire, the lighter fluid can in the fire, the fumes emanating from the truck, Lt. Brannin’s recognition of the bottle as a common methamphetamine manufacturing vessel, and Smith’s statement that he wanted to leave (presumably with the potentially explosive bottle still in the vehicle engine), the totality of the circumstances indicate it was reasonable for Lt. Brannin to believe there was a risk evidence would be destroyed or an explosion could occur.
There being probable cause to search the truck and seize the bottle, together with exigent circumstances preventing any delay to obtain a warrant, the warrantless search was lawful. Smith’s motion to suppress should have been denied. Accordingly we reverse the order granting the motion, and remand to the trial court for further proceedings.
REVERSED and REMANDED.
ROBERTS, C.J., and SWANSON, J., concur.

. See Fla. R. App. P. 9.140(c)(1)(B) (providing for appeal by State of orders suppressing evidence obtained by search and seizure).