FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA

_____

No. 1D2024-1249
_____

STATE OF FLORIDA,

    Appellant,

    v.

LANCE NEALY, JR.,

    Appellee.

_____

On appeal from the Circuit Court for Jefferson County.
Dawn Caloca-Johnson, Judge.

January 7, 2026

ROWE, J.

    The State appeals the trial court's order granting Lance Nealy's motion to suppress evidence found on his cellphone.[1] The State raises multiple arguments for reversal. We address only one and reverse.

_____

[1] We have jurisdiction. *See* Fla. R. App. P. 9.140(c)(1)(B).

*Facts*

On August 23, 2021, two gang members shot and killed each other in the front yard of a Monticello home. One of the gang members—Jamien Davis—was a friend of Nealy's and was affiliated with the same gang as Nealy. Exactly a year later—on August 23, 2022—another fatal shooting occurred at that same home around 9:30 p.m.

A surveillance video captured the 2022 shooting. The video showed a tall, thin, light-skinned black male approach the home, knock on the door, wait for someone to answer, shoot five times through the door, and then run away. Nealy matched the description of and closely resembled the shooter depicted in the video. Criminal investigators at the scene recovered .40 caliber shell casings.

Around two weeks before the shooting, law enforcement received an intelligence bulletin stating that Nealy had stolen a .40 caliber Glock from a friend. Nealy's friend had been trying to sell the weapon and had texted pictures of it to Nealy. The friend informed law enforcement that Nealy commonly used his cellphone to facilitate the purchase, sale, and theft of firearms. In fact, in June 2022, law enforcement learned through monitoring a gang member's jail calls that Nealy was sent to retrieve a firearm so that one of his associates could carry out a murder. Nealy was instructed to use Instagram, a social media application accessible by mobile phone, to contact the person who had the firearm.

At another point before the August 2022 shooting, a confidential informant notified law enforcement that Nealy mentioned that he was going to retaliate for Jamien Davis' death. Investigators also learned that Nealy told his school resource officer that he was going to skip school on August 23 to "celebrate . . . the life of Jamien Davis on the one-year anniversary of his death." Nealy skipped school on August 23. But he was back in school the following morning, mere hours after the lethal shooting. Based on this information, law enforcement developed Nealy as a suspect and sent an officer to contact Nealy at the school.

Nealy became visibly nervous as soon as he saw the officer. He was scanning the area, sweating, and asked multiple times if he would be arrested. The officer asked Nealy if he had any weapons on him. Nealy responded by placing his phone on the counter and emptying his pockets. The officer seized the phone. The officer then told Nealy that she was present at the school to discuss the shooting from the night before. Nealy immediately asked to leave.

After Nealy left the school, the officer went to Nealy's house. Nealy admitted that there were firearms in the home but refused to turn them over, so law enforcement secured the residence while they obtained a search warrant. The process for obtaining a search warrant involved several steps. First, law enforcement had to draft a warrant application, which usually took several hours. The draft then had to be sent to the State Attorney's Office for approval, and sometimes, multiple drafts would go back and forth between the sheriff's office and the State Attorney's Office before a final version was approved. After a final version was approved, the sheriff's office could submit it to a judge. But because Jefferson County did not have an electronic warrant system, the warrant application had to be submitted in person.

Furthermore, the sheriff's office, which was going through a staff shortage, needed to summon all its available officers to secure Nealy's home and obtain the search warrant for the home. Then, once that warrant was obtained, those same officers were needed to conduct the search. Only after the search of the home was completed could the sheriff's office turn its attention to obtaining a search warrant for Nealy's cellphone, and it did so. But because the courthouse was not open overnight, law enforcement had to wait until the next morning to get the warrant application in front of a judge. A search warrant for Nealy's cellphone was issued early the next day, around twenty-four hours after law enforcement seized the phone. Law enforcement found incriminating evidence on the phone, and Nealy was indicted for first-degree murder.

Nealy moved to suppress the evidence found on his phone, arguing that law enforcement had unlawfully seized the phone without a warrant. At the motion hearing, the State argued that law enforcement had probable cause to seize Nealy's phone. The State then argued that the exigent circumstances exception to the

warrant requirement applied because Nealy could have deleted evidence from the phone if he had been allowed to leave the school with it. Defense counsel argued that law enforcement lacked probable cause to seize the phone and that the sheriff's office created the exigent circumstances by choosing to confront Nealy before getting a search warrant for his phone. The State explained the delays in obtaining the warrant and argued that it was necessary to confront Nealy as soon as possible because he went to school just hours after the shooting and might still have been armed.

After the hearing, the trial court issued a written order granting Nealy's motion to suppress. The trial court found that law enforcement had probable cause to seize Nealy's phone but that no exigent circumstances existed. The court concluded that, when the State seizes a cellphone based on suspicion that evidence will be destroyed before a warrant can be secured, the State "must" identify some "affirmative" indication from the defendant that he will imminently destroy evidence. Finding that Nealy gave no such affirmative indication here, the court granted his motion to suppress. This appeal follows.

*Analysis*

The State argues that the trial court erred when it concluded that the exigent circumstances exception applied only if Nealy "affirmatively indicate[d]" that he would destroy evidence on the cellphone if it were not immediately seized. The State argues that no such "affirmative indication" is required. Rather, the trial court should have considered the totality of the circumstances that existed at the time of the seizure to determine whether exigent circumstances justified the warrantless seizure of Nealy's cellphone. We agree.

We review a trial court's ruling on a motion to suppress under a mixed standard. *See Channell v. State*, 257 So. 3d 1228, 1232 (Fla. 1st DCA 2018). We review the court's factual findings for competent, substantial evidence, and we review its legal conclusions de novo. *Id.*

4

Before reaching the merits of the State's argument, we first address Nealy's argument that the State failed to preserve its challenge to the trial court's "affirmative indication" ruling. Nealy argues that the State did not raise that challenge at the motion hearing. But the State's failure to do so is unsurprising given that the trial court's "affirmative indication" ruling appeared for the first time in its written order granting suppression.

In any event, the State preserved its argument that the trial court had to consider the totality of the circumstances to determine whether there were exigent circumstances to support the warrantless seizure of the phone. The State made that argument at the suppression hearing and repeated the argument in its briefs on appeal. *See* § 924.051(1)(b), Fla. Stat. (providing that to preserve an issue for appeal, an issue or legal argument raised below should be "sufficiently precise that it fairly apprised the trial court of the relief sought and the grounds therefor").

Turning to the merits, the Florida Constitution guarantees the "right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures" and specifies that this right "shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court." Art. I, § 12, Fla. Const. "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (footnote omitted); *see also Segura v. United States*, 468 U.S. 796, 810 (1984) (explaining that searches are entitled to heightened protection when compared to seizures).

A warrantless search or seizure is "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). A warrantless seizure will not be considered unreasonable when (1) there is probable cause to believe the property is or contains evidence of a crime and (2) the seizure falls within an established exception to the warrant

5

requirement. *Jones v. State*, 648 So. 2d 669, 676 (Fla. 1994) (citing *United States v. Place*, 462 U.S. 696, 701 (1983)).

The first prong that must be satisfied for a warrantless seizure to be permissible is probable cause. *See id.* "[P]robable cause is a flexible, common-sense standard" that "merely requires that the facts available to the officer would 'warrant a [person] of reasonable caution in the belief,' that certain items may be . . . useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983) (internal citation omitted). Here, the trial court correctly found that law enforcement had probable cause to seize Nealy's phone.

Once probable cause is established, the other prong that must be satisfied for a warrantless seizure to be permitted is an established exception to the warrant requirement. *See Jones*, 648 So. 2d at 676. One such exception is exigent circumstances. *Id.* In determining whether exigent circumstances existed at the time of a seizure, courts employ "a fact-specific inquiry that depends on the totality of the circumstances." *State v. Darter*, 350 So. 3d 370, 384 (Fla. 4th DCA 2022) (quoting *United States v. Arellano-Ochoa*, 461 F.3d 1142, 1145 (9th Cir. 2006)). The exigent circumstance the State argued here was that, if the investigating officer did not seize Nealy's phone after alerting him that law enforcement was on to him, Nealy would have destroyed the evidence on his phone.

To determine whether the officer's fear that Nealy would destroy evidence could justify a warrantless seizure, the trial court had to conduct a fact-specific inquiry to determine whether the totality of the circumstances indicated that it was reasonable for the officer "to believe there was a risk evidence would be destroyed." *See State v. Smith*, 172 So. 3d 993, 999–1000 (Fla. 1st DCA 2015). Missing here is any requirement that the defendant must affirmatively indicate that he is about to destroy evidence. While such an indication or the lack thereof is *a* circumstance, the inquiry focuses on the *totality* of the circumstances. *See id.*

Even so, the trial court concluded that for the exception to apply, Nealy had to affirmatively indicate he was about to destroy evidence before the officer could seize his phone without a warrant.

6

In reaching this conclusion, the trial court cited several opinions where appellate courts upheld warrantless seizures after the defendants gave such indications. *Darter,* 350 So. 3d at 384–85; *United States v. Babcock*, 924 F.3d 1180, 1194–95 (11th Cir. 2019); *Hanifan v. State*, 177 So. 3d 277, 279–80 (Fla. 2d DCA 2015). While each defendant's affirmative indication was a circumstance that helped establish exigency in those cases, it does not mean that the same circumstance is necessary to establish exigency in every case. Instead, the proper inquiry focuses on the totality of the circumstances in a given case. *See Darter*, 350 So. 3d at 384; *see also Herring v. State*, 168 So. 3d 240, 243 (Fla. 1st DCA 2015) (observing that "[t]here is no exhaustive list of what constitutes exigent circumstances" while identifying factors that may indicate exigency including the "likelihood that delay could cause . . . the destruction of essential evidence"). And so, we hold that the trial court erred when it concluded that Nealy had to affirmatively indicate that he planned to destroy the evidence on his phone before officers could seize the phone without a warrant.

We therefore REVERSE the trial court's order.

LEWIS and WINOKUR, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

James Uthmeier, Attorney General, and Adam B. Wilson, Assistant Attorney General, Tallahassee, for Appellant.

Jessica J. Yeary, Public Defender, and Kathryn Lane, Assistant Public Defender, Tallahassee, for Appellee.